In the

# UNITED STATES COURT OF APPEALS
### for the Seventh Circuit

## No. 24-3234

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

v.

**ANTHONY IBEKIE,**

**Defendant-Appellant.**

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 20 CR 352 — Steven C. Seeger, *Judge.*

## BRIEF OF THE UNITED STATES

ANDREW S. BOUTROS
United States Attorney
for the Northern District of Illinois
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

ALEXANDRA N. MORGAN
Assistant United States Attorney

PAIGE A. NUTINI
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

JURISDICTIONAL STATEMENT ....................................................................... 1

ISSUE PRESENTED FOR REVIEW ................................................................. 1

STATEMENT OF THE CASE .............................................................................. 1

SUMMARY OF ARGUMENT ............................................................................ 12

ARGUMENT ........................................................................................................ 13

I.    The Government's Evidence Was Sufficient to Support the Jury's Verdict on Count Five............................................................. 13

    A.    Standard of Review...................................................................... 13

    B.    Analysis ........................................................................................ 14

CONCLUSION .................................................................................................... 19

## TABLE OF AUTHORITIES

### CASES

*United States v. Filer*, 56 F.4th 421 (7th Cir. 2022) ........................................ 14

*United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ........................... 15

*United States v. Marr*, 760 F.3d 733 (7th Cir. 2014) ..................................... 15

*United States v. Memar*, 906 F.3d 652 (7th Cir. 2018) ............................. 14, 18

*United States v. Osadzinski*, 97 F.4th 484 (7th Cir. 2024) ............................ 13

*United States v. Persfull*, 660 F.3d 286 (7th Cir. 2011) .................................. 18

*United States v. Shorter*, 874 F.3d 969 (7th Cir. 2017) .................................. 18

### STATUTES

18 U.S.C. § 1014 ....................................................................................... 1, 2, 4

18 U.S.C. § 1341 ....................................................................................... 1, 2, 4

18 U.S.C. § 1343 ....................................................................................... 1, 2, 4

18 U.S.C. § 1543 ....................................................................................... 1, 2, 4

18 U.S.C. § 1957 ....................................................................................... 1, 2, 4

18 U.S.C. § 3231 ............................................................................................... 1

18 U.S.C. § 3742 ............................................................................................... 1

28 U.S.C. § 1291 ............................................................................................... 1

### RULES

Federal Rule of Criminal Procedure 29(c) ....................................................... 11

## JURISDICTIONAL STATEMENT

Defendant-Appellant's jurisdictional statement is not complete and correct. Defendant Anthony Ibekie was charged with making false statements to a bank, mail fraud, wire fraud, passport fraud, and money laundering, all in violation of 18 U.S.C. §§ 1014, 1341, 1343, 1543, and 1957. R. 1.[1] After a jury trial, defendant was found guilty on all counts and was sentenced by the district court on November 21, 2024. R. 406. The district court's judgment and sentencing order was entered on the docket on November 27, 2024. R. 410. Defendant filed a timely notice of appeal on December 9, 2024. R. 413.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## ISSUE PRESENTED FOR REVIEW

Whether the evidence, viewed in the light most favorable to the government, supported the jury's verdict on Count Five.

## STATEMENT OF THE CASE

For his involvement in an inheritance fraud scheme, a jury convicted defendant of fourteen counts for committing wire and mail fraud, money

---

[1] Citations to the record in Appellant's criminal case, 20 CR 352, are to "R.", followed by the applicable docket item number. Citations to Appellant's brief are to "Br.", followed by the page number, and citations to its appendices are to "App." followed by the page number. The trial transcript (which is available at R. 444-49) is cited as "Tr."

laundering, making false statements to a bank, and passport fraud, all in violation of 18 U.S.C. §§ 1014, 1341, 1343, 1543, and 1957. R. 334.

### *Overview of Offense Conduct*

Between 2017 and 2020, defendant and his co-schemers, including Samuel Aniukwu and Jennifer Gosha, participated in an inheritance fraud scheme in which they deceived numerous victims, many of them elderly, out of hundreds of thousands of dollars.

The scheme worked as follows: Ibekie and his co-schemers contacted thousands of individuals by letter purporting to be one of two Canadian banks, "TD Canada Bank" with John Delon identified as the bank employee or "Standard Chartered Bank" with Peter Pfizer identified as the bank employee. Tr. 515-16. The letters were mailed to potential victims in bulk. Tr. 907. To create these bulk mailings, defendant and his co-schemers used mail merge technology—which allows for a letter template to be merged for printing purposes with a list of names and addresses—and spreadsheets listing hundreds of names and addresses of these potential victims. Tr. 907.

The letters to victims stated that they had a distant relative who had died without a will and left an account at the bank, and advised that the victim would need to hire the services of a Canadian lawyer to collect the money in his or her relative's purported account. Tr. 517. Once the victim got in touch with the "bank employee" Delon or Pfizer (actually defendant and his co-

schemers), they would advise the victim to hire a lawyer named Pierre DeLouis and provide contact information for this lawyer, who did not exist. Instead, defendant and his co-schemers controlled the email address. Tr. 474, 517, 600.

Over the course of several months, "DeLouis" and "TD Canada Bank" and/or "Standard Chartered Bank" (actually the defendant and his co-schemers) would charge the victims various fees and instruct them to wire the money to bank accounts opened in the Chicago area by defendant and his co-schemers, or send cashier's checks to various addresses associated with defendant and his co-schemers. Tr. 482, 488, 505, 507, 565.

Defendant and his co-schemers used many bank accounts in the name of fictitious entities including Globayo LLC, Setraco Services Inc., Samcord Inc., Jenant Inc., Emetech Solutions Inc., Godmeks Inc., Esijemine Lucky Negite Inc., and Berger Services Inc., with defendant and his co-schemers—often using nominees or alias identities—listed as the account signatories. Tr. 552-55. After receiving victim funds, some of these bank accounts then immediately transferred funds oversees to an Access Bank account in Nigeria in defendant's name. Tr. 699, 843, 866-68. Many victims realized they were being defrauded and there was no inheritance only after defendant and his co-schemers had extracted thousands of dollars from them.

*Indictment*

For his involvement in the fraud scheme, defendant was charged with wire and mail fraud (Counts One through Eight), money laundering (Count Nine), making false statements to a bank (Counts 11, 13, and 16), and passport fraud (Counts 12 and 14), all in violation of 18 U.S.C. §§ 1014, 1341, 1343, 1543, and 1957. R. 294.

Relevant to this appeal, Count Five of the amended indictment charged defendant with wire fraud relating to a September 4, 2019 execution in which victim Gary Foster wired $7,680 of funds to a BMO Harris Bank account in the name of Berger Services, Inc. R. 294.

*Trial*

During a six-day jury trial in June 2024, the government presented evidence consistent with the offense conduct described above. The jury heard from numerous witnesses, including victims and law enforcement witnesses, who described how the inheritance fraud scheme was effectuated by defendant and his co-schemers.

Victims Cong Le, Dale Helms, David Petroselli, and Robert Aguada all testified at trial and told a similar story of how they received letters in the mail about a purported inheritance and began communicating with representatives of a Canadian bank about that inheritance. They walked through the steps taken to deceive them into believing the inheritance was real, their transfer of

money to bank accounts in the name of various fictitious entities, and their eventual realization they had been defrauded.

For example, 63-year-old Cong Le testified that he received a letter in the mail at his residence in Texas purporting to be from John Delon of TD Canada Trust Bank about an inheritance Le was entitled to. Tr. 968. Le responded to the letter and began communicating by email with Delon and others at TD Canada Trust Bank, who directed Le to hire Canadian attorney Pierre DeLouis to assist him with claiming his inheritance. Tr. 970-71. Over the course of the next several months, Le wired or mailed over $200,000 to the bank accounts controlled by defendant and his co-schemers. More specifically, he: wired $6,405 to the Jenant bank account; wired $22,962.75 to the Setraco Services bank account; mailed an $80,000 cashier's check to Setraco Services at an address in Illinois; and mailed a $97,500 cashier's check to Jenant at a separate address in Illinois. Tr. 972-980. Le explained that these payments were made with the expectation that they would assist Le in obtaining his inheritance. Tr. 972-980. Eventually, Le learned he had been defrauded. Tr. 980-81.

Dale Helms, a 71-year-old mechanic and bus driver, testified that he received two letters in the mail at his residence in Minnesota purporting to be from Peter Pfizer of Standard Chartered Bank about a multi-million-dollar inheritance to which Helms was entitled. Tr. 462-64, 466-67. Helms responded

to the letter and began communicating with Pfizer (using various email addresses including peterpfizer456@aol.com and pepterp968@yahoo.com) and others at Standard Chartered Bank, who then directed Helms to contact another bank, TD Canada Trust Bank. Tr. 467-73, 485. Helms began communicating with purported individuals at TD Canada Trust Bank, and like Cong Le, was advised to hire Canadian attorney Pierre DeLouis to assist him with claiming his inheritance. Tr. 474. Over the course of the next several weeks, Helms wired $6,400 to a bank account for Emetech Solutions and mailed a $20,925 cashier's check to Globayo at co-defendant Gosha's address in Oak Park, Illinois—all with the expectation that these payments were going to assist Helms in obtaining his inheritance. Tr. 482-83, 489-90. Eventually, Helms realized the inheritance was not real and he had lost his savings. Tr. 493-94.

An Internal Revenue Service-Criminal Investigation undercover agent testified about posing as a victim who had received an inheritance fraud letter in the mail. The undercover agent contacted the email address for Peter Pfizer (ppfizer456@aol.com) listed in an inheritance scheme letter intercepted by law enforcement and began communicating with him. Tr. 591. The undercover agent also had several recorded phone calls with defendant, who was posing as "Pfizer." During these phone calls, defendant coached the undercover agent on what to tell banks when depositing funds—specifically, that it was for the

purchase of goods or merchandise and not an inheritance—so that it was not flagged as fraudulent. Tr. 615-16. Defendant's son, Ebuka Egbunam, testified at trial and identified defendant's voice as the individual posing as Pfizer on the calls. Tr. 726. And defendant himself, who testified at trial, admitted on cross examination that he was posing as Pfizer during these calls. Tr. 1214-15, 1217.

The jury heard other evidence of defendant's involvement in the inheritance fraud scheme, including:

- Ebuka Egbunam, defendant's son, testified that while he was living with defendant, he came across what Egbunam described as a "scam letter" on defendant's desk and around the house, describing there were thousands of copies of the letter. Tr. 727-28. Egbunam described being asked to assist defendant and co-defendant Aniukwu fold hundreds of these letters, and that defendant wore gloves when doing so. Tr. 729-30, 732.

- A Homeland Security Investigations agent testified that law enforcement recovered numerous, ripped up draft victim inheritance fraud letters from defendant's trash can during the time frame of the inheritance fraud scheme that were drafted from TD Canada Trust Bank and signed by John Delon. Tr. 669, 672.

- A fingerprint expert testified that defendant's fingerprint was recovered from an envelope addressed to a potential victim and containing an inheritance fraud letter signed by Peter Pfizer. Tr. 560, 650. The letter was recovered by law enforcement because it was undeliverable, and therefore, was returned to the return address listed on the letter: the DuPage County State's Attorney's Office. Tr. 557.

- An IRS Criminal Investigations agent testified that law enforcement conducted a search warrant at defendant's residence where they recovered from defendant's garage office multiple items related to the scheme, including: two large printers, a pile of envelopes, a printed list

of names, phone numbers, and passwords including multiple email addresses for Peter Pfizer, and documents in a shred bin including inheritance fraud letters signed by Pfizer. Tr. 828-29, 834-37, 847.

### *Testimony About Gary Foster and the Count Five Wire Transfer*

Victim Gary Foster did not testify at trial, but the government presented evidence of the fraud against Foster, including in the context of the overall scheme. An IRS Criminal Investigations agent testified that Berger Services was a company registered in the name of defendant's ex-wife. Tr. 546-47. Like other fictitious entities in this case, the government presented evidence that defendant was the one controlling Berger Services. For example, the jury heard testimony that the Illinois articles of incorporation for Berger Services were found in defendant's garage office. Tr. 839.

The government present financial records establishing that Berger Services had a bank account with BMO Harris Bank—the account that received Foster's $7,680 wire transfer—and that defendant's ex-wife was the signatory on that account. Tr. 549. Records from BMO Harris Bank established that defendant had control over this account, paying his rent out of the account via checks he appeared to have signed. Tr. 555-57.

The jury also saw Federal Reserve wire transfer records showing Foster's $7,680 transfer: a September 4, 2019 wire to Berger Services from Total Soil Solutions at an address in Orland, California. Tr. 859. Agent testimony established that Total Soil Solutions was Foster's family business in

California, and that the address listed on the wire transfer records was Foster's residential address. *Id.* The day after Foster's wire transfer into the Berger BMO Harris Bank account, bank records showed a $10,500 wire transfer out of the account to a Nigerian Access Bank account held in defendant's name. Tr. 868.

The parties stipulated during trial that the "$7,680 transfer of funds by Victim Gary Foster to a BMO Harris Bank account for BERGER on or about September 4, 2019, caused an interstate wire communication resulting in the transfer of those funds." Tr. 863.

Another IRS Criminal Investigations agent, Special Agent Christopher Kadonsky, testified at trial about the mail merge process that defendant and his co-schemers used during the inheritance fraud scheme to target potential victims in bulk. Kadonsky explained that defendant and his co-schemers took template letters and "merged" those with Excel spreadsheets containing lists of potential victims' names and addresses, printing those letters for distribution. Tr. 907. The government introduced emails at trial between the defendant and his co-schemers in which defendant discussed merging template inheritance fraud letters with the names and addresses of potential victims on Excel spreadsheets defendant purchased. Tr. 907-09.

One of the emails introduced at trial from defendant to co-schemer Aniukwu contained a version of the template inheritance fraud letter on

Standard Chartered Bank letterhead, signed by Peter Pfizer with an email address of "ppfizer@yandex.com." Tr. 910-11, 914. Kadonsky testified that throughout the course of the scheme, the Pfizer alias used multiple email addresses to communicate with victims—but Kadonsky was familiar with this specific email address because it was used to communicate with victims including Gary Foster. Tr. 914-15. Kadonsky knew this, in part, based on his voluminous review of at least six digital devices seized at defendant's residence containing terabytes of electronic data. Tr. 1023-25.

From this electronic data review, Kadonsky testified that approximately 200 spreadsheets were recovered from the digital devices belonging to defendant. Tr. 1023, 1060. Each spreadsheet, used for mail merging, contained approximately 1,000 potential victims' names and addresses.[2] *Id.* Kadonsky testified that within the spreadsheets he reviewed, he came across the names of several known inheritance fraud victims including Dale Helms, Cong Le, and Gary Foster. Tr. 1061. Kadonsky testified that he came across Foster's name and/or address on more than one of the spreadsheets. Tr. 1062.

---

[2] Given the voluminous nature of the spreadsheets, the government admitted one victim spreadsheet as an example (Tr. 1060-61), and Agent Kadonsky testified about their contents based on his review of defendant's devices.

At the conclusion of the trial, the jury convicted defendant on all 14 counts, including Count Five related to victim Gary Foster's $7,680 wire transfer. R. 334.

### *Motion for Judgment of Acquittal*

Following the close of evidence, defendant moved orally for a judgement of acquittal under Federal Rule of Criminal Procedure 29(c) on all counts including Count Five, and the district court reserved ruling on the motion. Tr. 1102, 1105, 1316. Defendant also later submitted a post-trial Rule 29 motion on all counts. R. 338. At the district court's request (Tr. 1461-62), the government submitted a brief summary of the evidence and exhibits introduced at trial pertaining solely to Count Five. R. 337.

The district court denied defendant's motion for a judgment of acquittal via an oral ruling. R. 450; App. 10. The district court concluded that there was sufficient evidence to convict defendant on all counts. Regarding Count Five specifically, the district court concluded that "the evidence about Foster was not overwhelming, but the evidence was enough. It was just enough." App. 14. The district court noted that Foster did not testify and the government did not admit into evidence any documents containing communications between defendant and Foster. App. 15-16. But the district court reasoned that the government presented circumstantial evidence that allowed the jury to make reasonable inferences to support a conviction for wire fraud on Count Five,

including evidence of Foster's wire transfer, evidence that defendant used the name Peter Pfizer as part of his "*modus operandi* when committing the fraud," and agent testimony that defendant had emailed with Foster using the ppfizer@yandex.com email account and that Foster's name appeared on several spreadsheets containing potential victim lists. App. 16-21.

## Sentencing

The district court sentenced defendant to a within-Guidelines term of imprisonment of 240 months—216 months for the wire and mail fraud counts, and a consecutive 24 months for the remaining counts—and a three-year term of supervised release. R. 410. The district court also ordered defendant to pay restitution in the amount of $865,976.88. *Id.*

## SUMMARY OF ARGUMENT

The jury's verdict on Count Five was amply supported by the evidence. Defendant concedes that the evidence presented at trial regarding Count Five established every element of wire fraud but one: whether defendant intended to defraud Gary Foster. Br. 12. As the trial evidence established, Foster was one of many victims who fell prey to defendant's elaborate inheritance fraud scheme, which was devised with the purpose of deceiving victims to gain money from them. The jury heard substantial evidence about how defendant operated the scheme, including by communicating with victims using aliases and fictional business names, including the alias "Peter Pfizer."

12

Witness testimony established that Gary Foster showed up on spreadsheets defendant purchased containing the names and addresses of potential victims. These spreadsheets were then merged with the inheritance fraud template letters defendant created and mailed to potential victims in bulk. Many of the letters were signed by the "Peter Pfizer" alias, using various email addresses including ppfizer@yandex.com. The jury also heard that law enforcement obtained voluminous data from defendant's electronic devices, including hundreds of Excel spreadsheets with potential victim names and email communications between defendant and victims. Amongst this voluminous data were communications in which defendant used the ppfizer@yandex.com email address to communicate directly with Foster. Based on this evidence, and in the context of the substantial evidence the jury heard about defendant's scheme, the jury rationally concluded that defendant intended to defraud Gary Foster.

## ARGUMENT

### I.     The Government's Evidence Was Sufficient to Support the Jury's Verdict on Count Five.

#### A.     Standard of Review

In challenging the sufficiency of the evidence, defendant faces a "nearly insurmountable hurdle." *United States v. Osadzinski*, 97 F.4th 484, 496 (7th Cir. 2024). A verdict may be overturned only if "after viewing the evidence in

the light most favorable to the government, the record is devoid of evidence from which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Memar*, 906 F.3d 652, 656 (7th Cir. 2018) (internal marks omitted).

## B.    Analysis

Defendant contends there was insufficient evidence at trial to convict him of wire fraud on Count Five. Br. at 12-15. To prove defendant guilty, the government needed to show that (1) defendant participated in a scheme to defraud, (2) defendant had the intent to defraud, and (3) interstate wires were used in furtherance of the scheme. *United States v. Filer*, 56 F.4th 421, 427 (7th Cir. 2022). The government was also required to prove that the scheme involved a materially false statement or representation. *Id.*

On appeal, defendant concedes that the evidence was sufficient on the other counts in the indictment, which include the other wire and mail fraud charges that were part of the same scheme. Defendant's sole challenge is to Count Five and the second element: whether the government proved Gary Foster was an intended victim of defendant's inheritance fraud scheme. Br. 14. Defendant argues that because the government did not present evidence on the content of the email communications between Foster and defendant's alias Pfizer, there was insufficient evidence to conclude defendant intended to defraud Foster specifically and to support the jury's verdict on Count Five.

14

Br. 14-15. Defense counsel made similar arguments to the jury (Tr. 1404), and they reasonably rejected them.

As an initial matter, defendant misunderstands what the government must demonstrate to secure a wire fraud conviction. To prove Count Five, the government was required to prove that defendant knowingly participated in a scheme to defraud with the intent to defraud, the scheme involved materially false representations, and it caused Foster's interstate wire to be made in furtherance of that scheme. *See* R. 327 at 24 (jury instructions). As this Court has made clear, "in a wire fraud case the object of fraud is not an element of offense." *United States v. Marr*, 760 F.3d 733, 744 (7th Cir. 2014) (internal quotation marks omitted).

For example, in *United States v. Henningsen*, a mail fraud case, this Court rejected the defendant's argument that, "because he had not met all of the donors who contributed to his campaign [from which he was diverting funds], he could not have made false representations to each of them," and therefore a necessary element of mail fraud was missing. 387 F.3d 585, 590 (7th Cir. 2004). *Henningsen* rejected the assumption that misrepresentations to each specific fraud victim were necessary, emphasizing instead, "[t]he crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim." *Id.* Here, while the government was required to show that defendant participated in a scheme to defraud with the intent to

15

defraud the scheme's victims through materially false representations, and that he caused Foster's wire for the purpose of carrying out that scheme, it was not required to show that defendant intended to defraud Foster specifically.

But in any event, the evidence demonstrated that defendant intended to defraud Foster. Like other victims who were a part of the scheme including Helms and Le, Foster appeared on mail-merge lists containing the names and addresses of hundreds of individuals. The jury reviewed emails in which defendant and his co-schemers explained how they used these lists: they merged lists defendant purchased containing the names and addresses of individuals with inheritance fraud letter templates. Tr. 907-09. The jury also heard testimony that law enforcement discovered two large printers and stacks of envelopes in defendant's garage office during a search warrant, and defendant's son Egbunam testified that he assisted defendant and Aniukwu in folding inheritance fraud letters for mailing.

The jury additionally learned that defendant used multiple email addresses to communicate with victims posing as Peter Pfizer, and Special Agent Kadonsky testified that one of those email addresses (ppfizer@yandex.com) specifically was used to communicate with Foster. Tr. 910-11, 914. The jury heard testimony that Foster's family business wired $7,680 to Berger Services on September 4, 2019, and the next day, $10,500 was

16

wired out of the Berger Services account to defendant's Nigerian Access Bank account.

The jury reasonably concluded, from the circumstantial evidence, that defendant intended to defraud Foster. In contending that the evidence on Count Five was insufficient, defendant attempts to divorce the evidence related to Foster from the substantial evidence the jury heard about how defendant operated the inheritance fraud scheme and how his dealing with Foster fit within the scheme.

The jury heard substantial evidence of defendant's involvement in the scheme, including the steps he took to orchestrate the scheme by mailing out letters in bulk to potential victims; communicating by email to those who responded; and ultimately convincing these victims to send him money. The jury also saw documents and heard testimony about defendant's aliases and fake businesses, which he used to perpetuate the scheme while attempting to hide his identity. And the evidence about Foster demonstrated that defendant used the same *modus operandi* with Foster as he did with the other victims. The jury heard detailed testimony from victims Helms and Le—whose names also showed up on mail merge lists and who also had email communications with "bank representatives" Pfizer or Delon—about their interactions with defendant.

That the jury did not see the specific contents of email communications between Foster and defendant is not dispositive. Instead, the jury was permitted to draw the reasonable inference, based on the abundant circumstantial evidence before it, that defendant intended to defraud Foster. *See United States v. Shorter*, 874 F.3d 969, 978-79 (7th Cir. 2017) (in rejecting defendant's sufficiency challenge to charges arising out of a Medicaid scheme, emphasizing that the defendant's "argument ignores the other, powerful *circumstantial* evidence that permitted the jury to convict her, especially because the jury could reasonably *infer* from the evidence that she caused the fraudulent billings") (internal quotations omitted); *Memar*, 906 F.3d at 656 ("There is nothing wrong with circumstantial evidence of guilt. While a verdict based on speculation cannot stand, one premised on reasonable inferences is sound." (internal citations omitted)); *United States v. Persfull*, 660 F.3d 286, 295 (7th Cir. 2011) ("[C]ircumstantial evidence is sufficient to prove fraudulent intent and to support a conviction.").

Taken in the light most favorable to the government, the evidence sufficiently supported defendant's conviction on Count Five.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court affirm the district court's judgment on Count Five.

Respectfully submitted.

ANDREW S. BOUTROS
United States Attorney

ALEXANDRA N. MORGAN
Assistant United States Attorney

/s/ *Paige A. Nutini*
PAIGE A. NUTINI
Assistant United States Attorney

## RULE 32 CERTIFICATION

I hereby certify that:

This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the Microsoft Office Word proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

Respectfully submitted.

ANDREW S. BOUTROS
United States Attorney

By:      /s/ *Paige A. Nutini*
PAIGE A. NUTINI
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I electronically filed the foregoing Brief of the United States with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted.

By:      /s/ *Paige A. Nutini*
            PAIGE A. NUTINI
            Assistant United States Attorney
            219 South Dearborn Street, 5th Floor
            Chicago, Illinois 60604
            (312) 353-5300